# 88    APPELLATE COURTS OF ILLINOIS.

VOL. 44.]    Union Mutual Life Ins. Co. v. C. & W. I. R. R. Co.

# UNION MUTUAL LIFE INSURANCE COMPANY

v.

# THE CHICAGO AND WESTERN INDIANA RAILROAD COMPANY ET AL.

*Sale of Land Subject to Possible Right of Redemption—Agreement of Vendor to Refund, if Redeemed, the Purchase Price, with Interest, out of the Redemption Fund.*

In the case presented, a railroad company purchased from appellant a piece of land, to which another party claimed a right of redemption from a trustee's sale, under which vendor held, and the vendor agreed that, if the claimant should sustain his claim of the right to redeem, it would refund the purchase money with interest. This court holds that the case presented by the evidence showed no sufficient reason for releasing the vendor from its agreement to pay interest on the purchase money, the property having been redeemed by the claimant through a decree of court.

[Opinion filed March 4, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding.

In June, 1870, William J. Slee, being the owner of lot 1, block 9, Assessor's Second Divison, etc., and 30 by 60 feet of lots 11 and 12, Wilder's North Addition to Chicago, borrowed from the appellant $4,500, securing the loan by a trust deed upon the above described premises. The possession of these premises was subsequently turned over to the appellant; and out of this grew differences respecting their care and the amount remaining due upon the loan. In January, 1879, the trustee named in the trust deed advertised the premises for sale, and in February following the same were sold, the appellant becoming the purchaser for the sum of $5,100, and a deed was made from the trustee to the appellant. The sale left, according to the computation of the trustee, a deficit of $229, for which amount judgment was

entered against Slee July, 1879, and execution issued and levied on 6 and 8-10 feet of lot 2, block 9—a portion of the property not included in the trust deed or the sale thereunder. This property was at the execution sale bid in by the appellant for $252.61, and a certificate of sale issued by the sheriff therefor.

In the summer of 1879 Slee caused to be recorded a declaration giving notice of his claim that the trustee's sale to the appellant was invalid, and that he still claimed his right of redemption. In the latter part of 1879 the Chicago and Western Indiana Railroad Company, being in need of these premises for its right of way, A. J. Averill on its behalf went to Mr. Warfield, who represented appellant, and asked for appellant's price upon the property. Warfield named $3,500, that sum being the amount at which the property had been appraised by certain real estate valuers and what Mr. Warfield considered a full and fair value for the property at that time. The notice filed by Slee appeared upon the abstract of title which Averill had, and in consequence, there was some talk about obtaining a quit-claim deed from Slee. Warfield saw Slee and represented to Averill that Slee would not consent to a sale unless the price was fixed at a figure that would cut down Slee's entire indebtedness to the insurance company to $3,000, and that it would require a payment of $4,680, to obtain a quit-claim deed from Slee as well as from the insurance company. The insurance company believed that on an accounting between it and Slee there would be found due to it from Slee the sum of $7,680, and informed the railroad company of its belief in that regard. Accordingly on the 24th day of March, 1880, the railroad company purchased the premises from the insurance company, taking its deed for the premises included in the trustee's deed, and also an assignment of its certificate of the purchase at the sheriff's sale, and paying to it the sum of $4,680, and received from it at the time of such payment the following agreement:

"Agreement made March 24th, 1880, between The Union Mutual Life Insurance Company and Albert J. Averill, Witnesseth:

90    Appellate Courts of Illinois.

Vol. 44.]    Union Mutual Life Ins. Co. v. C. & W. I. R. R. Co.

"Whereas, said Averill has purchased from said company for $4,680, lot 1, in block 9, in Assessor's Second Division, etc., * * * and the 30 by 60 feet of lots 11 and 12 in block 2, in Wilder's North Addition to Chicago, etc., * * * the title to which land was acquired by said company by virtue of a sale made under the power of sale contained in a certain trust deed given by William J. Slee and wife to Levi D. Boone, dated June 4th, 1870, and recorded, etc., * * * and,

"Whereas, said Slee has placed on record in said recorder's office a notice to the effect that he claims the right to redeem said property from said sale, the validity of which claim said company denies.

"Now therefore, it is agreed that in the event of redemption made by Slee, his heirs, etc., of the property described in said trust deed, the said Averill, his heirs, or assigns, shall be entitled to have and receive out of the redemption money paid by said Slee, his heirs, etc., the said sum of $4,680 with interest from the day of the date hereof, at six per cent, and also whatever money shall in the event of such redemption be decreed by the court to be paid by said Slee, his heirs, etc., for or on account of any taxes, assessments or other outlays made by the said Averill upon the said property so as aforesaid purchased by him."

Prior to the making of this agreement, viz., in January, 1880, the railroad company had begun condemnation proceedings for the purpose of acquiring title to this property. Appellant did not appear in this proceeding to condemn, but Slee appeared and cross-examined the witnesses who testified on behalf of the railroad company.

On the 26th of April, 1880, a verdict was rendered in the condemnation proceedings fixing the value of the property at $6,615; and on the 27th of December, 1880, the railroad company thereunder paid into the county treasury that amount. On the 13th of October, 1880, Slee filed a bill to redeem, making only the insurance company a party defendant thereto. In this bill he alleged that the judgment against him entered by the insurance company was not for any *bona fide* debt and that he owed no deficit; that on

April 28, 1880, a verdict had been rendered in the condemnation proceedings fixing the value of the property at $6,615, and that it was the duty of the railroad company to pay said sum of money into the county treasury; that the insurance company claimed that said sum of money should be paid to it and not to him, the complainant; that about May 1st, he had found the Third avenue property vacant and unoccupied, and took and had since kept possession, while the insurance company retained possession of the other property. The bill contained a prayer for an accounting with the insurance company, and for an injunction to restrain it from collecting from the county treasurer the money so deposited, and that the sale under the trust deed and the trustee's deed be declared to be for his, complainant's, benefit, and that the judgment against him, complainant, be declared void and set aside. The insurance company answered the bill denying that Slee had any right whatever to redeem from the trustee's sale or to have the said judgment set aside; and among other things answered that pending the condemnation proceedings and prior to the filing of the said bill by Slee it sold and conveyed the Third avenue property to the railroad company and had no interest in or claim upon any of the condemnation moneys. The bill filed by Slee proceeded to a degree in which the right of Slee to redeem from the trustee's sale was determined. Thereafter on the 23d of March, 1885, Slee obtained leave to and did amend his bill *nunc pro tunc* as of July 13, 1883, by making the Chicago and Western Indiana Railroad Company a party defendant. The railroad company answered the amended bill denying Slee's right to redeem, and thereafter the suit proceeded until an adjudication was had determining the right of Slee to redeem, not only as against the insurance company but as against the railroad company; and that in the accounting to be had on such redemption the railroad company should be considered as the assignee of the mortgage held by the insurance company under which its trustee made sale of the premises; and that in such accounting between the railroad company and Slee, the railroad company would be charged with the sum of $4,680, as of December 27,

92    APPELLATE COURTS OF ILLINOIS.

VOL. 44.]    Union Mutual Life Ins. Co. v. C. & W. I. R. R. Co.

1880, the time at which the condemnation money was paid into the county treasury. The $6,615 deposited in the county treasury by the railroad company under the condemnation proceedings, remained there until the 15th of June, 1889, when, under a stipulation, a portion of it was withdrawn.

On the 2d of July, 1888, the railroad company obtained leave to and did file its cross-bill in the original litigation, which was still pending against the insurance company, for the enforcement of the agreement entered into by the insurance company on the 24th of March, 1880; that in the event of the redemption by Slee of the premises by it purchased from the insurance company, the railroad company should be entitled to receive out of the redemption money paid by Slee the sum of $4,680, with interest from the date of said agreement at six per cent; and prayed that an account might be taken fixing the rights of the insurance company, the railroad company and Slee, and that the insurance company might be ordered to pay to it the sum of $4,680, with interest at six per cent per annum from April 20, 1880, and that it, the complainant, might have a lien or right of priority on the redemption money to the extent of its said claim.

The insurance company answered denying that it was under any obligations to pay any interest on said sum of $4,680, and it is concerning the interest on this sum of $4,680, or rather the interest lost upon said sum on account of its having lain idle in the county treasury for nearly ten years, that the decree from which an appeal has been taken to this court was made.

The Circuit Court found for the railroad company, and directed that the insurance company pay to it interest on said sum of $4,680, from December 27, 1888, to the 17th of January, 1889, at six per cent per annum, amounting to $2,262.92.

The litigation between said Slee and the railroad company having been settled out of court, the insurance company prosecutes this appeal to reverse the decree, directing it to pay interest as aforesaid on said sum of $4,680.

Messrs. Grosscup & Wean, for appellant.

Messrs. Osborn & Lynde, for appellee.

Waterman, P. J. Appellee, desiring to purchase certain real property, applied to appellant, in whom the title then stood of record. Appellant asked $3,500 for the property. Appellee being informed that one Slee claimed an interest therein, appellant's agent saw Slee, and then told appellee that it would cost $4,680 to obtain deeds from both appellant and Slee; that treating the mortgage under which appellant had acquired title as still subsisting, there would then be due to appellant thereon upon an accounting, $7,680; whereupon appellee paid to appellant $4,680, and received from it a deed, but failed to get a deed from Slee; appellee, when paying said $4,680, took from appellant an agreement, whereby, after reciting that Slee had placed on record a notice that he claimed the right to redeem said property from the sale made under a trust deed by him given, the validity of which claim the insurance company denies, appellant "agreed that in the event of redemption made by said Slee, his heirs, etc., of the property described in said trust deed, the said Averill, his heirs or assigns, should be entitled to have and receive out of the redemption money paid by said Slee, his heirs, etc., the sum of $4,680, with interest from the day of the date of said agreement, at six per cent."

Appellant, no doubt in perfect good faith, represented to appellee that in case of a redemption by Slee he would be obliged to pay $7,680. In other words, the representation was that the fund to which appellee might look for the repayment of its $4,680 and interest, amounted to $2,000 more than the amount appellee was paying. Appellee, instead of getting a quit-claim from Slee, as was proposed when the sum of $4,680 was first named, got the agreement of appellant as to a repayment of that sum with interest out of the redemption money, and a representation by appellant as to what the redemption money would be. For this agreement, under the representation, it paid $1,180 more than appel-

lant asked for its own conveyance. The sum to which the redemption money would amount was a thing concerning which appellant had all existing knowledge; the accounts were its accounts, kept by its agents in its office. Appellant and Slee were alone possessed of the information necessary to the formation of an opinion as to whether Slee had a right to redeem, and if so what sum he would have to pay in order to do so. Receiving from appellee as appellant did under these circumstances $1,180 more than it asked for its own conveyance, and giving the agreement of March 24th, we think it was not only bound to speak what it believed to be the truth, but that it must be held, to the extent of appellee's rights, bound to make good the truthfulness of its representation as to the sum to which the redemption money would amount. Nor do we think it is absolved from this obligation, because appellee, under the condemnation proceedings, paid $6,615 into the county treasury. The condemnation proceedings had been pending some months when the agreement of March 24, 1880, was entered into. Appellee had need of this property, and its conveyance from and payment to appellant gave it nothing but a mortgage claim thereon. The suggestion that it might have retained in its hands the true amount owing by Slee, and which he was bound to pay in order to redeem, and have paid to the county treasurer only the balance necessary to make up the condemnation award, would have force if, first, it had known or been bound to know that Slee had a right to redeem; and second, had known or been bound to know the amount of money that would be required for such purpose. It did not know and was not bound to know either of these things. Appellant denied through years of litigation the right of Slee to redeem. Appellee was in no position to concede what appellant denied. Appellant is held by the decree in this case only to make good a representation upon which it must have known appellee relied in taking the agreement and paying $1,180 more than appellant asked for its conveyance.

The decree of the Circuit Court will therefore be affirmed.

